1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ERIC MARTIN,

     Plaintiff,

  v.

DAVID WINETT, et al.,

     Defendants.

_____/

CASE NO. 1:04-cv-05358-LJO-GSA PC

ORDER STRIKING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS UNTIMELY, AND DENYING PLAINTIFF'S MOTION IN LIMINE AS MOOT

(Docs. 88 and 95)

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DIRECTING THE CLERK OF THE COURT TO ENTER JUDGMENT FOR DEFENDANTS AND AGAINST PLAINTIFF AND CLOSE THIS CASE

(Doc. 79)

I.  Plaintiff's Motion for Summary Judgment

   Plaintiff Eric Martin ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on Plaintiff's amended complaint, filed December 27, 2004, against Defendant Gracey[1] for violating Plaintiff's rights under the Eighth Amendment by depriving Plaintiff of water to his cell, and Defendants Aguirre and Huerta for violating Plaintiff's right of access to the courts by mailing home Plaintiff's legal property and

_____

[1] Identified as Gracie in the amended complaint.

1

1 │ causing Plaintiff to miss a Supreme Court deadline.[2]  On June 13, 2007, Defendants Gracey, Aguirre,

2 │ and Huerta ("Defendants") filed a motion for summary judgment. (Docs. 79-81.)  Plaintiff filed an

3 │ opposition on September 19, 2007, and Defendants filed a reply on October 19, 2007.[3]  (Docs. 85-87,

4 │ 91.) On November 15, 2007, Plaintiff filed a motion for summary judgment. (Doc. 95.)  Defendants

5 │ filed an opposition on December 6, 2007, and Plaintiff filed a reply on December 28, 2007.  (Docs.

6 │ 96, 97.)

7 │    Pursuant to the Court's scheduling order, the deadline for filing pre-trial dispositive motions

8 │ was May 14, 2007.  (Doc. 73.)  Requests for an extension of any deadline set by scheduling order

9 │ must be supported by good cause and must be made prior to the expiration of the deadline.  (Doc.

10 │ 52, ¶¶10, 22.)  Defendants filed a timely request for an extension of time to file their motion for

11 │ summary judgment and the deadline was extended to June 13, 2007.  (Docs. 76, 78.)  Plaintiff's

12 │ motion for summary judgment, filed more than six months after the expiration of the motion

13 │ deadline, is untimely and will not be considered by the Court.  Plaintiff's contention in his reply that

14 │ the motion is not dispositive and  is therefore not subject to the pre-trial dispositive motion deadline

15 │ is without merit.  The motion shall be stricken from the record as untimely.

16 │ II. Defendants' Motion for Summary Judgment

17 │   A. Summary Judgment Standard

18 │    Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

19 │ as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R.

20 │ Civ. P. 56(c).  Under summary judgment practice, the moving party

21 │     [A]lways bears the initial responsibility of informing the district court
22 │     of the basis for its motion, and identifying those portions of "the

23 │
24 │   [2] Plaintiff's due process and denial of access to the courts claims against Defendants Johnson and Stainer;
   │ due process, denial of access to the courts, and Eighth Amendment claims against Defendant Winett; and Eighth
25 │ Amendment claim against Defendant Parker were dismissed from this action, with prejudice, for failure to state
   │ claims upon which relief may be granted under section 1983.  In addition, Defendants Johnson, Stainer, Winett, and
26 │ Parker were dismissed from this action based on Plaintiff's failure to state any claims upon which relief may be
   │ granted against them under section 1983, and Defendant Holcolm was dismissed pursuant to Plaintiff's notice of
   │ voluntary dismissal.  (Docs. 27, 73.)

27 │

28 │   [3] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by
   │ the Court in an order filed on July 14, 2005.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (Doc. 36.)

1   pleadings, depositions, answers to interrogatories, and admissions on
    file, together with the affidavits, if any," which it believes
2   demonstrate the absence of a genuine issue of material fact.

3   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

4   burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

5   in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"

6   Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon

7   motion, against a party who fails to make a showing sufficient to establish the existence of an

8   element essential to that party's case, and on which that party will bear the burden of proof at trial.

9   Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's

10  case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

11  should be granted, "so long as whatever is before the district court demonstrates that the standard

12  for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

13      If the moving party meets its initial responsibility, the burden then shifts to the opposing

14  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

15  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence

16  of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

17  required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

18  material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475

19  U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e.,

20  a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby,

21  Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d

22  626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable

23  jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d

24  1433, 1436 (9th Cir. 1987).

25      In the endeavor to establish the existence of a factual dispute, the opposing party need not

26  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

27  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

28  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

   B.   Material Undisputed Facts

      1.   Conditions of Confinement Claim Against Defendant Gracey

1.   During the time period relevant to Plaintiff's claim against Defendant Gracey, Plaintiff was an inmate housed at California Correctional Institution.

2.   On November 1, 2002, the water in the administrative segregation unit where Plaintiff was housed was turned off for repairs.

3.   When the water for the building was turned back on, the water did not work in Plaintiff's cell.

4.   November 1, 2002, was a Friday.

5.   Defendant Gracey is a maintenance mechanic, not a plumber, and worked Tuesday through Saturday.

///

4

6.    On Saturday, November 2, 2002, Defendant Gracey was directed by the Watch Commander to Plaintiff's housing unit, but was not directed to Plaintiff's housing unit to work on Plaintiff's cell.

7.    Defendant Gracey was redirected to fix a leaking ceiling before the water to Plaintiff's cell was restored.

8.    Water was restored to Plaintiff's cell on November 4, 2002.

2.    Access to the Courts Claim Against Defendant Aguirre and Huerta

9.    During the time period relevant to Plaintiff's claim against Defendants Aguirre and Huerta, Plaintiff was an inmate housed at California State Prison-Corcoran.

10.   Plaintiff was transferred to CSP-Corcoran on March 12, 2003, and was issued some of his property on March 25, 2003.

11.   California Department of Corrections and Rehabilitation regulations provide that inmates may possess six cubic feet or personal property and, depending on the privilege group, two appliances and a musical instrument. Inmates may not retain any of their excess property and it is shipped home at their expense.

12.   CSP-Corcoran has a six cubic feet measuring box to allow staff to determine whether an inmate has excess property.

C.    Conditions of Confinement Claim

In his amended complaint, Plaintiff alleges that on November 1, 2002, the water was turned off by prison officials for maintenance and when it was turned back on, there was no water to his cell, number 206.[4]  (Doc. 34, Amend. Comp., pg. 4.)  Plaintiff alleges that on November 2, 2002, Defendant Gracey, a maintenance mechanic, arrived, opened the plumbing chamber between cells 205 and 206, and repaired the water problem for cell 205 only.  (Id.)  Plaintiff alleges that he called out to Gracey as he was leaving and informed him that the water in Plaintiff's cell had not been restored.  (Id.)  Plaintiff alleges that Gracey said he had another situation to attend to and would return.  (Id.)  Plaintiff alleges that Gracey did not return, and on November 4, 2002, a plumber

---

[4]  Plaintiff's amended complaint is verified and is treated as an opposing affidavit by the Court.  Moran v. Selig, 447 F.3d 948, 759-60 (9th Cir. 2006); Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

1   arrived and fixed the problem.  (Id.)  Plaintiff alleges that he was without water for four days and

2   suffered severe dehydration and physical illness as a result.  (Id.)

3          To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under

4   color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal

5   law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  "A person deprives

6   another of a constitutional right, where that person 'does an affirmative act, participates in another's

7   affirmative acts, or omits to perform an act which [that person] is legally required to do that causes

8   the deprivation of which complaint is made.'"  Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007)

9   (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "[T]he 'requisite causal connection

10  can be established not only by some kind of direct, personal participation in the deprivation, but also

11  be setting in motion a series of acts by others which the actor knows or reasonably should know

12  would cause others to inflict the constitutional injury.'"  Id. (quoting Johnson at 743-44).

13         Plaintiff's claim against Defendant Gracey arises out of allegedly unconstitutional conditions

14  of confinement, in violation of the Eighth Amendment.  "The Eighth Amendment's prohibition

15  against cruel and unusual punishment protects prisoners not only from inhumane methods of

16  punishment but also from inhumane conditions of confinement."  Morgan v. Morgensen, 465 F.3d

17  1041, 1045 (9th Cir. 2006).  "[W]hile conditions of confinement may be, and often are, restrictive

18  and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'"  Id. (quoting

19  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)).  "What is necessary to show

20  sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim

21  at issue . . . ."  Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995 (1992).  "[E]xtreme deprivations

22  are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim."  Id. at 9

23  (citation omitted).  With respect to this type of claim, "[b]ecause routine discomfort is part of the

24  penalty that criminal offenders pay for their offenses against society, only those deprivations denying

25  the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an

26  Eighth Amendment violation."  Id. (quotations and citations omitted).

27         Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison

28  officials may be held liable only if they acted with "deliberate indifference to a substantial risk of

serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991)).  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.  Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128.

Defendant Gracey contends that he is entitled to summary adjudication on the claim against him because he did not know the water was off in Plaintiff's cell and because Plaintiff had access to drinking water and medical care, so his health was not endangered during the period of time his water was not working.  (Doc. 81, Def. Exs. C, D.)  Defendant contends that only the water to Plaintiff's sink was not functioning, so Plaintiff did not lack necessary sanitation, and inmates are provided with three meals a day including a beverage.  (Def. Ex. K, D.)  Defendant also contends that if Plaintiff felt dehydrated, he could have notified a medical technical assistant he needed help or requested water from a guard.  (Def. Ex. D.)

The Court finds that Defendant Gracey has met his initial burden of informing the Court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

1    "Deliberate indifference is a high legal standard." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060

2    (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from

3    which the inference could be drawn that a substantial risk of serious harm exists,' but that person

4    'must also draw the inference.'" <u>Id</u>. at 1057 (quoting <u>Farmer</u>, 511 U.S. at 837). "'If a prison official

5    should have been aware of the risk, but was not, then the official has not violated the Eighth

6    Amendment, no matter how severe the risk.'" <u>Id</u>. (quoting <u>Gibson v. County of Washoe, Nevada</u>,

7    290 F.3d 1175, 1188 (9th Cir. 2002)).

8         Assuming the truth of Plaintiff's allegations concerning the lack of sink and toilet water in

9    his cell and the effects he suffered as a result, Plaintiff has made no showing that Defendant Gracey

10   was responsible the violation of his rights. (Doc. 86, Martin Dec., ¶¶5-7.) First, Defendant Gracey

11   is a maintenance mechanic and Plaintiff has not submitted any evidence that a maintenance mechanic

12   rather than custody staff would be responsible for ensuring adequate drinking water to inmates

13   housed in cells without water. Second, assuming arguendo that a maintenance mechanic had some

14   responsibility and ability to ensure the provision of drinking water to Plaintiff, Plaintiff has not

15   presented any evidence that Defendant "had actual knowledge" of a serious risk of harm to Plaintiff

16   and deliberately disregarded that risk. <u>See Johnson v. Lewis</u>, 217 F.3d 726, 734 (9th Cir. 2000). At

17   most, Plaintiff has presented evidence that on November 2, 2002, Defendant was made aware that

18   the water to Plaintiff's cell had not been functioning since the previous day, and that Defendant

19   promised to return but failed to do so. (Doc. 34, Amend. Comp., pg. 4; Doc. 86, Martin Dec., ¶¶6,

20   7.)

21        Plaintiff argues that even though Defendant was not a plumber, he had some knowledge of

22   plumbing and was the person dispatched to restore the water, but failed or refused to do so. (Doc.

23   85, 9:12-18.) Further, Plaintiff argues that being redirected to fix a leaky ceiling should "not take

24   precedence over the immediate water needs of a human being and the clear and present danger

25   inherent in leaving a person, (or even an animal), in such a confined and water deprived condition."

26   (<u>Id</u>., 9:22-26.)

27        Being housed in a cell without a working water supply is not, without more, a condition so

28   inhumane that it constitutes a violation of the Eighth Amendment. Thus, assuming Defendant

Gracey was on notice that Plaintiff's cell lacked running water but left the building without fixing

the water, that action, or failure to act, did not violate Plaintiff's constitutional rights. Rather, it is

the allegation that Plaintiff was housed in a cell without any access to water to drink for days and

suffered severe dehydration as a result which implicates the protections of the Eighth Amendment.[5]

There is no evidence that Defendant Gracey was responsible for the alleged failure to provide

Plaintiff with adequate drinking water during the period water was not being supplied to his cell, and

there is no evidence that Defendant Gracey knew Plaintiff was in dire need of drinking water but

opted not to intervene.  Absent the submission of evidence demonstrating that at the time Defendant

Gracey crossed paths with Plaintiff, Plaintiff was being subjected to an objectively substantial risk

of harm to his health and Defendant Gracey possessed the requisite mental state of deliberate

indifference, there are no triable issues of fact and Defendant Gracey is entitled to summary

adjudication on the claim against him.

        D.     <u>Access to the Courts Claim</u>

     In his amended complaint, Plaintiff alleges that he was transferred to CSP-Corcoran on

March 12, 2003, and went to the property release building on March 25, 2003, to get his property.

(Amend. Comp., pgs. 5 & 6.)  Plaintiff alleges that Defendants Aguirre and Huerta mailed his legal

property to his mother's house despite being told repeatedly by Plaintiff that he had a filing deadline

at the United States Supreme Court.  (<u>Id</u>., pgs. 6 & 7.)  The property was subsequently shipped back

to the prison with the warden's permission and issued to Plaintiff on April 25, 2003.  (<u>Id</u>., pg. 8.)

Plaintiff alleges that he completed and mailed his petition for writ of certiorari as quickly as possible,

but it was rejected by the Court as untimely.  (<u>Id</u>.)  Plaintiff alleges that but for Defendants' actions,

his petition would have been timely and he might have been able to obtain reversal of his criminal

conviction.  (<u>Id</u>.)

     Inmates have a fundamental constitutional right of access to the courts.  <u>Lewis v. Casey</u>, 518

U.S. 343, 346, 116 S.Ct. 2174, 2177 (1996).  The right is limited to direct criminal appeals, habeas

petitions, and civil rights actions.  <u>Id</u>. at 354, 2181-82.  Claims for denial of access to the courts may

---

[5] The claim against Defendant Gracey does not involve allegations of sewage fumes.  (Doc. 34, pg. 4.)
Rather, Plaintiff alleges severe dehydration.  (<u>Id</u>.)

1   arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking

2   access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking

3   claim).  Christopher v. Harbury, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002).  For

4   backward-looking claims such as that at issue here, Plaintiff "must show: 1) the loss of a

5   'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a

6   remedy that may be awarded as recompense but that is not otherwise available in a future suit."

7   Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007).

8           Defendants argue that there is no evidence Plaintiff had a pending deadline when he was

9   transferred to CSP-Corcoran, but assuming he did, he was allowed to select the property he wished

10  to retain and his failure to select the relevant legal material was the cause of the material being sent

11  from the prison.  (Doc. 80, Memo., 8:13-14 & 22-25.)  Defendants further argue that Plaintiff was

12  not pursuing a meritorious claim and therefore did not suffer an actual injury when his petition was

13  rejected by the Supreme Court as untimely.  (Id., 9:10-27.)

14          Plaintiff disputes that he was allowed to go through his property and retain the property he

15  wanted or needed.  (Martin Dec., ¶18; Opp., 22:2-21.)  Plaintiff contends that he was not only rushed

16  through the process but was not allowed any choice in what property was placed in the measuring

17  box.  (Id.)  Plaintiff also argues that the claims set forth in his petition had merit and could have led

18  to the reversal of his conviction, and that the Ninth Circuit is often overturned by the Supreme Court

19  and he had a right to bring his action to the Supreme Court.  (Id., 18:16-19:13.)

20          The dispute between the parties precludes the Court from finding that Plaintiff was

21  responsible for failing to select and retain his pertinent legal material.  However, for the reasons set

22  forth below, Plaintiff's claim that he had a pending deadline he missed fails as a matter of law.  As

23  a result, it is unnecessary for the Court to reach the argument that the claim Plaintiff was pursuing

24  to the Supreme Court lacked merit.

25          Plaintiff initiated a petition for writ of habeas corpus in the Northern District of California

26  and a petition for writ of habeas corpus in the Central District of California.[6]  Both actions were

27

28          [6] The Court takes judicial notice of Martin v. Ayers, 41 Fed.Appx. 972 (9th Cir. 2002) and Martin v. Ayers,
    52 Fed.Appx. 917 (9th Cir. 2002).

dismissed by the district courts as barred by the statute of limitations, and both dismissals were affirmed by the Ninth Circuit.[7]  The dismissal of the petition by the Central District was affirmed on July 25, 2002, and the dismissal of the petition by the Northern District was affirmed on December 9, 2002.[8]  Plaintiff asserts that he was pursuing further appeal of both actions in one petition to the Supreme Court.  (Doc. 86, Martin Dec., ¶15.)

The petition was initially submitted to the Supreme Court on November 20, 2002.[9]  (Doc. 85, Opp., pg. 20:21-24.[10])  Plaintiff's exhibits reflect that the Supreme Court received the petition for writ of certiorari, postmarked November 21, 2002, on November 29, 2002.  (Opp., Ex. C, Court Record pg. 58.)  In a letter dated December 2, 2002, the Court returned the petition for failure to include an affidavit or declaration of indigency, and for failure to append the district court and appellate court opinions.  (Id.)  Plaintiff was given sixty days within which to correct the deficiencies and resubmit the petition.  (Id.)  In a letter dated February 3, 2003, the Court again returned the petition for failure to append the district court cases and gave Plaintiff sixty days to correct the deficiency.  (Id., CR pg. 64.)  In a letter dated March 31, 2003, the Court returned the petition to Plaintiff for the third time for failure to cure the deficiency.  (Id., CR pg. 67.)  That letter did not set a deadline or otherwise invite Plaintiff to resubmit the petition.  (Id.)  Nevertheless, Plaintiff again submitted the petition, which was received and rejected by the Court a fourth time in a letter dated June 5, 2003.  (Id., CR pg. 76.)  In the letter, the Clerk of the Court informed Plaintiff that a *corrected* petition had not been received within sixty days from the letter dated February 3, 2003.  (Id.)

///

---

[7] Id.

[8] Id.

[9] The Court recognizes the inconsistency between the claim that Plaintiff was simultaneously pursuing an appeal in both actions in the petition submitted on November 20, 2002, and the fact that the Ninth Circuit did not issue its ruling in one of the actions until December 9, 2002.  This issue is ultimately irrelevant, though.

[10] Plaintiff's opposition is verified and may be treated as an opposing affidavit for purposes of summary judgment rule.  Moran v. Selig, 447 F.3d 948, 759-60 (9th Cir. 2006); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

1    Plaintiff's claim that pursuant to the February letter, he was under a deadline of April 3,

2    2003, approximately, and was prevented from complying with that deadline due to the confiscation

3    of his property on March 25 is belied by the evidence. (Martin Dec., ¶¶13, 16; Opp., 21:4-12.)  On

4    March 25, 2003, when Plaintiff was in the property building and allegedly told Defendants he had

5    a deadline, his petition had already been submitted to the Supreme Court for the third time, in

6    attempted compliance with the February letter.  The petition was subsequently received and rejected

7    by the Court on March 31, 2003, six days after the incident between Plaintiff and Defendants

8    occurred.

9    It is blame for the fourth rejection in June that Plaintiff is attempting to lay at the feet of

10   Defendants.  However, the evidence establishes that Defendants did not cause Plaintiff to be unable

11   to file a timely petition with the Supreme Court, as Plaintiff's petition was on its way to the Supreme

12   Court at the time Plaintiff's property was in the process of being mailed home.  Whatever previous

13   difficulties Plaintiff may have encountered in drafting his petition due to his segregation at California

14   Correctional Institution, those difficulties are not relevant to his claim against Defendants Aguirre

15   and Huerta at CSP-Corcoran. (Opp., 20:1-27.)   Plaintiff's claim that Defendants denied him access

16   to the court is utterly without merit, and Defendants are entitled to judgment as a matter of law.

17                E.      Motion in Limine

18   On October 3, 2007, Plaintiff filed a motion seeking to exclude evidence of his criminal

19   convictions.  Plaintiff's convictions were not considered by the Court in resolving Defendants'

20   motion for summary judgment and the motion is therefore denied as moot.

21   III.   Order

22   For the reasons set forth herein, it is HEREBY ORDERED that:

23        1.      Plaintiff's motion for summary judgment, filed November 15, 2007, is STRICKEN

24              from the record as untimely;

25        2.      Plaintiff's motion in limine, filed October 3, 2007, is DENIED as moot;

26        3.      Defendants' motion for summary judgment, filed June 13, 2007, is GRANTED,

27              thereby concluding this action in its entirety; and

28   ///

12

1        4.      The Clerk of the Court shall enter judgment for Defendants and against Plaintiff, and

2    shall close this case.

3

4

5    IT IS SO ORDERED.

6    **Dated:**    **March 6, 2008**                  **/s/ Lawrence J. O'Neill**

7                                           UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28